USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/1/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                            :

BOZENA SAJDLOWSKA,
                        Plaintiff,        :

                            :           16 Civ. 3947 (PAE)
           -v-                 :

                            :           OPINION & ORDER
GUARDIAN SERVICE INDUSTRIES, INC., JEREMY  :
BRESSLER, and MIGUEL QUISPE, individually,    :

                            :
                 Defendants.     :

                            :
-------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

In this employment discrimination action, Bozena Sajdlowska brings claims against

Guardian Service Industries, Inc. ("Guardian"), Jeremy Bressler, and Miguel Quispe.

Sajdlowska alleges that she was subjected to sexual harassment, a hostile work environment,

retaliation, and gender discrimination in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.

City Admin. Code § 8-101 *et seq.*

Defendants now move for dismissal of Sajdlowska's complaint pursuant to a mandatory

arbitration clause in a collective bargaining agreement or, in the alternative, for an order

compelling Sajdlowska to arbitrate her claims. For the following reasons, the Court grants

defendants' motion to compel arbitration and stays the case pending the completion of

arbitration.

## I.    Background[1]

### A.    The Parties

Guardian is a janitorial services company that maintains and cleans commercial properties in and around New York. Compl. ¶¶ 3, 7. At all relevant times, Bressler was Guardian's vice president, *id.* ¶ 8, and Quispe was a Guardian employee with supervisory authority over Sajdlowska, *id.* ¶ 10.

In or around July 2012, Sajdlowska began working for Guardian as a forelady. *Id.* ¶ 6. Around January 2014, she was promoted to night supervisor, a position with responsibilities including "preparing work orders for post construction clean-ups, managing and supervising the janitorial and cleaning staff, and handling payroll." *Id.* ¶ 11–12. Sajdlowska continued to work for Guardian until receiving written notice of her termination on February 9, 2015. *Id.* ¶ 77. Throughout her Guardian employment, Sajdlowska was a member of the Service Employees International Union, Local 32BJ (the "Union"). Dkt. 14 ("Pl. Br.") at 15.

### B.    The Collective Bargaining Agreement

At all times during Sajdlowska's employment, she and the defendants were bound by a collective bargaining agreement known as the Contractors Agreement (the "CBA"), formed

---

[1] The Court draws these facts primarily from the Complaint, Dkt. 2 ("Compl."), and from the collective bargaining agreement binding the parties, Dkt. 10, Ex. E ("CBA"). Although the CBA was neither attached to the Complaint nor referenced therein, the Court considers the CBA (and, when necessary, other materials of undisputed authenticity and accuracy that were attached to the parties' submissions) for purposes of this motion. "In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA") . . . the court applies a standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003), and courts therefore consider materials outside the Complaint, *see, e.g., HBC Solutions, Inc. v. Harris Corp.*, No. 13 Civ. 6327 (JMF), 2014 WL 6982921, at *1 (S.D.N.Y. Dec. 10, 2014).

2

between the Union and the Realty Advisory Board on Labor Relations ("RAB"), a

multiemployer association of which defendants are members.  Dkt. 9 ("Def. Br.") at 9.[2]

> In pertinent part, the CBA provides:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership or any characteristic protected by law, including, but not limited to, claims made pursuant to [Title VII], . . . [the NYSHRL], [the NYCHRL], . . . or any other similar laws, rules or regulations.

CBA Art. XVI § 30(A).  As to the resolution of discrimination claims, the CBA states:

> All [discrimination] claims shall be subject to the grievance and arbitration procedure [set forth in Articles V and VI of the CBA] as the sole and exclusive remedy for violations.  Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

*Id.*  The CBA provides for a grievance procedure "[t]o endeavor to adjust, without arbitration,

any issues between the parties which under the Agreement the parties are obligated to submit to

the Arbitrator."  *Id.* Art. V § 1(b).  The CBA contemplates that, in grievance and arbitration

proceedings, employees will often be represented by the Union.  *See id.* Art. V § 2.

> Where a dispute is not resolved via the grievance procedure, the CBA provides for

mandatory arbitration:

> A Contract Arbitrator shall have the power to decide all differences arising between the parties as to interpretation, application or performance of any part of this

---

[2] Although the CBA does not textually resolve whether supervisors like Quispe or Bressler are subject to the arbitration clause, *see* Def. Br. at 16, federal arbitration policy requires that, where there is an agreement to arbitrate, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 248 (2d Cir. 1991); *see also Pick Quick Food, Inc. v. United Food & Commercial Workers Local 342*, 952 F. Supp. 2d 494, 505 (E.D.N.Y. 2013).  And the CBA provides that an arbitrator "shall have the power to decide all differences arising between the parties as to interpretation, application or performance of any part of this Agreement."  CBA Art. VI § 1.  Therefore, whether the CBA covers disputes between Sajdlowska and Quispe, or Sajdlowska and Bressler, must be addressed, in the first instance, in arbitration.

3

Agreement and such other issues as are expressly required to be arbitrated before him/her . . . .

The procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues, and said Arbitrator shall have the power to grant any remedy required to correct a violation of this Agreement . . . , the award of the Arbitrator being final and binding upon the parties and the employee(s) involved; provided, however, that nothing herein shall be construed to forbid either of the parties from resorting to court for relief from, or to enforce rights under, any arbitration award.

*Id.* Art. VIII §§ 1, 4.

The Union and the RAB did not resolve, in the CBA, whether an individual employee who has sought but been denied Union support for her claim is required to arbitrate rather than pursue her claims in court. *See id.* Art. XVI § 30(B)(1). In drafting the CBA, they instead left that question—which the CBA describes as the "reserved question"—to be resolved in arbitration. The CBA provides that either the Union or RAB may initiate arbitration to resolve that question. *Id.* The CBA also sets forth procedures for arbitration of claims which employees bring without union representation. *See id.* § 30(B)(3).

### C.    Sajdlowska's Claims

Sajdlowska alleges that, during her employment with Guardian, Quispe sexually harassed her by "incessantly complimenting [her] on her looks, making sexual remarks and innuendos and engaging in unwanted touching." Compl. ¶ 16. After Sajdlowska made clear to Quispe that his advances were unwanted, Quispe allegedly "began to sabotage [her] work and create problems between her and her co-workers." *Id.* ¶ 32.

Sajdlowska claims that she requested that another supervisor report Quispe's behavior to Human Resources. *Id.* ¶ 64. Later, on October 21, 2014, Bressler summoned Sajdlowska to his office, where they discussed "only work related issues." *Id.* ¶ 67. When Sajdlowska asked

Bressler about her Human Resources complaint, Bressler told her that it was still under investigation and that they would discuss it later. *Id.* ¶ 69.

Around January 2015, Bressler transferred Sajdlowska to another work site. *Id.* ¶ 71. The staff at the new site told Sajdlowska that the building they were cleaning was about to be closed and that all employees assigned to that building were going to be terminated. *Id.* ¶¶ 74–76. On February 9, 2015, Sajdlowska received a letter from Guardian informing her that she had indeed been terminated. *Id.* ¶ 77.

Also on February 9, 2015, Sajdlowska filed a grievance with the Union. She alleged that Guardian had engaged in employment discrimination and retaliation by transferring and then terminating her employment after she reported Quispe's sexual harassment. Def. Br. at 8. On October 14, 2015, the Union wrote Sajdlowska a letter, informing her that the Union would not be pursuing a grievance or arbitrating a sexual harassment retaliation claim on her behalf, because she had failed to "cooperate with [the Union's] investigation or provide any information to support [her] claim." Dkt. 10, Ex. D. That letter separately advised Sajdlowska that she had the right to pursue her claim on her own, or with her own attorney, and that, if she chose to do so, she should begin by initiating a mediation process. *Id.*

On or around April 16, 2015, Sajdlowska filed a verified complaint with the New York State Division of Human Rights ("NYSDHR"), bringing allegations of "sexual/gender discrimination/harassment, hostile work environment, and retaliation." Pl. Br. at 11. On October 15, 2015, the NYSDHR found probable cause that Guardian had engaged in unlawful discrimination. *Id.* On February 26, 2016, Sajdlowska asked the NYSDHR to dismiss her

complaint "in order to permit her to pursue all her Federal and State claims against Guardian Services Ind. Inc. in federal court." Dkt. 15, Ex. A.

Sajdlowska also invoked the Union's mediation process administrated by the Office of Contract Arbitrator ("OCA"). Def. Br. at 8. On March 24, 2016, a mediation took place with counsel present. *Id.* The mediation did not result in resolving Sajdlowska's claims. *Id.*

### D.    Procedural History

On May 26, 2016, Sajdlowska filed the Complaint, alleging sexual harassment, a hostile work environment, retaliation, and discrimination in violation of Title VII, the NYSHRL, and the NYCHRL. Dkt. 2.

On July 29, 2016, defendants moved to dismiss the Complaint or compel arbitration, Dkt. 9, and filed a supporting memorandum of law, Dkt. 11.

On August 19, 2016, Sajdlowska filed a brief in opposition. Dkt. 14. On August 26, 2016, defendants filed a reply. Dkt. 17.

## II.    Applicable Legal Standards Under the Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate disputes." *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)) (internal quotation marks omitted). Congress enacted the FAA to reverse "centuries of judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other

contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal quotation marks omitted).

In resolving a claim that an action must be arbitrated pursuant to an arbitration agreement, this Court must determine: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008).

On a motion to compel arbitration under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun*, 316 F.3d at 175. "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (internal quotation marks omitted).

The party moving to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). The moving party need not "show initially that the agreement would be *enforceable*, merely that one existed." *Id.* (emphasis in original). Thereafter, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000)).

III.   **Discussion**

7

Defendants argue that, because the CBA requires Sajdlowska to arbitrate her discrimination claims, the Court should either dismiss her claims in their entirety or issue an order compelling arbitration. Def. Br. at 6. In response, Sajdlowska does not dispute that she is bound by the CBA and that her discrimination claims fall within the scope of the CBA's mandatory arbitration clause. *See* Pl. Br. at 15. Instead, she argues that defendants waived their right to arbitration under the CBA because: (1) they "unjustifiably delayed compelling arbitration which caused [Sajdlowska] prejudice and unnecessary costs"; and (2) an attachment to the CBA allowed Sajdlowska to bypass arbitration and file this action in federal court. The Court addresses these arguments in turn.

**A. Delay**

Sajdlowska first argues that defendants waived their right to arbitration because they "did not move swiftly to enforce an arbitration," causing her prejudice. Pl. Br. at 16. She notes that defendants did not move to compel arbitration until July 29, 2016, some 15 months after April 16, 2015, when she filed her administrative complaint with the NYSDHR. *Id.* During that period: (1) defendants submitted responsive documents to the NYSDHR (on or around May 15, 2015); (2) the NYSDHR found probable cause (October 15, 2015); (3) the parties participated in a mediation (March 24, 2015); (4) Sajdlowska commenced this action (May 26, 2016) and served defendants (June 14, 2016); and (5) defendants moved for an extension of time to respond to the complaint (June 29, 2016). *Id.* Sajdlowska states that, during this period, she (1) "had to endure Defendants' denial of her claims and provide to them sensitive information," including about medications proscribed to her for emotional distress, and (2) incurred $2,500 in attorney's fees in connection with proceedings before the NYSDHR. *Id.*

8

A "waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright-line rules." *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993). "[D]elay in seeking arbitration does not create a waiver unless it prejudices the opposing party." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995). "[P]retrial expense and delay—unfortunately inherent in litigation—without more, do not constitute prejudice sufficient to support a finding of waiver." *Id.* at 26. "[T]here is a strong presumption in favor of arbitration . . . [and] waiver of the right to arbitration is not to be lightly inferred." *See Cotton*, 4 F.3d at 179 (internal quotation marks and citation omitted).

Sajdlowska asks this Court to apply these principles, and hold that defendants delayed to such an extent as to waive their right to arbitration. However, "ordinarily a defense of waiver brought in opposition to a motion to compel arbitration . . . is a matter to be decided by the arbitrator." *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82–83 (2d Cir. 1998). Indeed, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "This is especially so, where . . . the existence of an arbitration agreement is undisputed." *Century Indem. Co. v. Viacom Int'l, Inc.*, No. 02 Civ. 2779 (DC), 2003 WL 402792, at *3 (S.D.N.Y. Feb. 20, 2003).

To be sure, a district court can "properly decide the question [of waiver] when the party seeking arbitration had already participated in litigation on the dispute." *Id.* at 83. But where no litigation has taken place before the court, district courts commonly—and properly—refer waiver issues to the arbitrator. *Bell v. Cendant Corp.*, 293 F.3d 563, 570 (2d Cir. 2002).

9

Here, whether defendants waived their right to arbitrate is properly resolved by an arbitrator, not the Court. There has been no substantive litigation before this Court. On the contrary, promptly upon being served with Sajdlowska's complaint, defendants moved to compel arbitration (or alternatively for dismissal in contemplation of arbitration). Sajdlowska does not dispute this. Nor does she dispute the general principle that waiver issues should be resolved in arbitration, or offer any reason why that principle should not apply here. Her essential argument—that her preference for litigation in court should take precedence—does not carry the day, given the body of law requiring, under the circumstances, that an arbitrator resolve her claim of waiver. Accordingly, the Court declines to consider her claim of waiver. Sajdlowska is, of course, at liberty to pursue her claim of waiver at the outset of arbitration.

**B. CBA Attachment**

Sajdlowska next argues that she is entitled to pursue her claims in court under Attachment 1 of the 2016 Contractors Stipulation of Agreement, which, she claims, authorized her to bypass arbitration and pursue her claims in court. Pl. Br. at 15–17. As relevant here, Attachment 1 requires that a plaintiff give written notice before attempting to bring a covered claim in court. *Id.* at 16. Sajdlowska contends that, having provided the proper written notice, she has the right to bypass arbitration. Defendants respond that the provision does not provide union members with an easy avenue to bypass the arbitration requirements. Rather, they argue the notice provision serves merely to require union members to "make the RAB and the Employers aware" of an attempt to bypass arbitration requirements so that, as here, "appropriate legal action can be taken to compel compliance." Dkt. 17 at 11.

As to this argument, too, the issue of waiver is properly reserved in the first instance for arbitration. *See S & R Co.,* 159 F.3d at 82–83. The Court therefore declines to consider it.

10

Upon a post-arbitration application to confirm or vacate the outcome of an arbitration, this argument—and Sajdlowska's other arguments for waiver—shall be suitable for judicial review.

### C. Dismissing or Staying this Case Pending Arbitration

As to whether to dismiss this action in light of the binding arbitration agreement, or to stay these proceedings pending arbitration, the Second Circuit recently resolved that question. It held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). Such a stay has been requested here, and a stay will expedite this case by enabling prompt arbitral resolution of Sajdlowska's claim and deferring any appellate review until after the arbitration has concluded. Accordingly, the Court stays this case pending arbitration.

### CONCLUSION

For the foregoing reasons, the Court refers Sajdlowska's claims to arbitration and stays the action pending the outcome of arbitration.

The parties are directed to submit a joint status letter to the Court every 90 days, measured from the date of this decision, advising the Court as to the status of arbitration proceedings.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 30, 2016
      New York, New York